## Rakestraw, Appellant, v. Woodward.

*Affidavit of defense—Practice, C. P.—Contract—Sale.*

In an action upon a promissory note defendant filed affidavits of defense in which he averred that the note was given in settlement for peach trees which plaintiffs expressly agreed would be "true to name as represented," that they were not "true to name as represented," but were a comparatively worthless variety, by reason of which deceit defendant suffered damage in a larger amount than plaintiffs demand, which was claimed as a set-off. The affidavits further stated that the distinctive variety of the trees would be exclusively known to the seller, that there was prompt notice of the defect, that plaintiffs requested defendant to leave the trees standing for another season to see if they would not do better, and that after that season defendant cut them down as worthless. *Held*, that the affidavit of defense was sufficient to prevent judgment, that defendant was entitled to a trial, and that the question of the measure of damages could only be determined at the trial.

Argued November 18, 1903.  Appeal, No. 124, Oct. T., 1903, by plaintiff, from order of C. P. Chester Co., April T., 1903, No. 22, discharging rule for judgment for want of a sufficient affidavit of defense in case of Thomas Rakestraw and J. W. Pyle, trading as Rakestraw & Pyle, v. Theodore B. Woodward.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.  Affirmed.

Assumpsit on a promissory note.

Defendant filed an affidavit of defense in which he averred that the note in suit was given in settlement for a balance alleged to be due for peach trees purchased by defendant from plaintiffs. The affidavit set forth the number and kind of trees ordered, and continued as follows:

Of the trees that were ordered the variety known as Foxe's Seedlings, to the extent of 275 trees, were not furnished with the exception of five or six of said variety, but in their place and stead, the plaintiffs furnished to the defendant, without his knowledge or consent, other and a different variety of trees than those purchased (and known as Foxe's Seedlings), which other and different trees proved to be comparatively worthless, and the defendant has suffered damage and loss by reason of said plaintiffs failing to perform their contract, to the extent of $600. The defendant relied wholly upon the promises and

representations of the plaintiffs as to the kind and variety of trees which they furnished him, inasmuch as it was impossible for him, the defendant, to know until the trees came into bearing, what were their kinds and varieties.

A supplemental affidavit of defense was in part as follows:

Said Rakestraw thereupon expressly agreed and guaranteed to furnish defendant the specific kind or variety of trees that he ordered; and defendant gave the order for peach trees as set out in the original affidavit filed, relying wholly and solely upon the said representations and guarantee of plaintiffs, inasmuch as it was impossible for him, the defendant, to know, until the trees came into bearing, of what varieties the said peach trees consisted. Defendant having had a large experience in the growing of peaches, knew the varieties of the same which were most profitable and included in his said order the varieties which were most profitable, of all of which facts the plaintiffs were then and there fully cognizant.

The trees were planted by said defendant upon his farm shortly after they were delivered by plaintiffs, in the spring of 1898. The 275 peach trees that were purchased as Foxe's Seedlings, and which were so labeled by plaintiffs when delivered by them, proved, with the exception of five or six, to be another and a comparatively worthless variety. In the fruit bearing season of 1901, to wit: in September, when defendant was first able to determine conclusively that the peaches in question were not Foxe's Seedlings, he showed some samples of said peaches to plaintiffs, and notified them of said fact, and invited them to go and see the trees themselves, which they did not do. In the spring of 1902 defendant again called on plaintiffs to endeavor to come to some settlement with them, on which occasion defendant stated to them that he intended cutting said trees down, as being comparatively worthless, whereupon said Rakestraw told him to leave them standing for another season to see if they would not do better, in consequence whereof defendant left said trees standing until another peach bearing season had passed, and the defendant having been further satisfied of the worthlessness of said trees has cut them down.

By reason of said facts, the defendant suffered loss and damage as follows:

The 5 or 6 true Foxe's Seedling trees bore during the seasons of 1900 and 1901 about ½ basket per tree, the market price of which was \$.80 per basket; 275 Foxe's Seedlings would therefore have brought in 1900,      \$110.00

do.   do.   do.   do.   do.   in 1901,   110.00

During the season of 1902, said 5 or 6 true Foxe's Seedling trees bore about 2 baskets per tree, at a market price of \$1.00 per basket; 175 Foxe's Seedlings would therefore have brought in 1902,   550.00

Total,   \$770.00

From this deduct price actually received from the 270 wrong trees (about 5 baskets in 1900, 10 in 1901, and 150 in 1902, total, 165 baskets at market price of 62½ cts. per basket),   \$103.00

Also deduct price received from the 5 or 6 true Foxe's Seedling trees (\$4.00 in 1900, \$4.00 in 1901, and \$10 in 1092),   18.00

Also deduct approximate cost for picking, etc.,   \$49.00

            \$170.00

Total loss,   \$600.00

Defendant therefore claims said amount of loss as a set-off to plaintiff's claim, as alleged in his original affidavit filed, and will ask to recover a verdict of the difference between \$600 and the amount of plaintiffs' claim.

The court discharged a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*George B. Johnson,* for appellant.—Where the article has not been returned, the measure of damages ordinarily is the difference between the value of the article delivered and the value of the article agreed to be delivered, at the time and place of delivery: Seigworth v. Leffel, 76 Pa. 476; Himes v. Kiehl, 154 Pa. 190; Youghiogheny Iron & Coal Co. v. Smith,

66 Pa. 340; Fessler v. Love & Powell, 48 Pa. 407; Kinports v. Breon, 193 Pa. 309; Joseph v. Richardson, 2 Pa. Superior Ct. 208; Whitbeck v. N. Y. Cent. R. R. Co., 36 Barbour (N. Y.), 644; United States v. Taylor, 35 Fed. Repr. 484.

The rule adopted by the Pennsylvania courts in tree cases is that the difference between the contract price and the market price of the trees at or about the time they are to be delivered is the measure of damages: Smethurst v. Woolston, 5 W. & S. 106; Kountz v. Kirkpatrick, 72 Pa. 376; Theiss v. Weiss, 166 Pa. 9; Kinports v. Breon, 193 Pa. 309.

*J. Carroll Hayes*, with him *Wm. H. Hayes*, for appellee.

OPINION BY ORLADY, J., May 10, 1904:

This suit is founded on a promissory note made by the defendant to the plaintiffs' order, dated January 1, 1900, due one year after date, for the sum of $290, with interest, etc.

The affidavits of defense, which were held by the court below to be sufficient to prevent a judgment, allege that the note was given in settlement of a bill for fruit trees purchased by the defendant and which the plaintiffs expressly agreed would be " true to name as represented," that they were not " true to name as represented," but were of a comparatively worthless variety, by reason of which known deceit and misrepresentation the defendant suffered damage in a larger amount than the plaintiffs' demand, which is claimed as a set-off." By the affidavits it is distinctly stated that the distinctive variety of the trees would be exclusively known to the seller, and his misrepresentation was the controlling reason for the purchase. There was as prompt a notice of the defense as could have been given, and the plaintiffs' request " to leave them standing for another season to see if they would not do better " was in their interest as much as the defendant's. The defendant wanted trees of a specified kind, these he had a right to have before being obliged to pay, and these the plaintiffs agreed to furnish. The controverted facts are set out with sufficient precision to pass the case to a jury for its determination. The measure of damages need not be passed upon as the case is now presented, inasmuch as the rule for which the plaintiffs contend is not applicable under the facts

disclosed by the record.   The mere difference in market value of young fruit trees, without considering loss of time, use of land, and other elements, would not be the true guage to determine the damages sustained.

It is urged that the damages claimed are too uncertain, remote and speculative to be definitely compensated, and cannot be considered.   Taking the affidavits together, the necessary inference is that the plaintiffs knowingly failed to furnish the kind and quality of trees required by the contract. The fact that some of them grew and were true to name might tend to minimize the amount of damages sustained, and might reasonably furnish a standard of value of the whole orchard if all the trees had been of like kind, but this would depend upon other items of proof not necessary to consider here.

Many authorities might be cited which hold that the damages claimed as a set-off must be direct and capable of being ascertained by some known legal standard, such as are the natural, necessary and immediate result of, and directly traceable to the breach ; such as might be properly deemed to have been stipulated for and in contemplation of the parties when the contract was entered into; and such as may be ascertained with approximate accuracy.   See Wade v. Haycock, 25 Pa. 382; Adams Express Co. v. Egbert, 36 Pa. 360 ; Fleming v. Beck, 48 Pa. 309; Wolf v. Studebaker, 65 Pa. 462; Kinports v. Breon, 193 Pa. 309.

As stated in Andrews v. Blue Ridge Packing Co., 206 Pa. 370, " an affidavit of defense should set forth fully and fairly facts sufficient to show prima facie a good defense, and if it fails to do so, either from omission of essential facts, or manifest evasiveness in the mode of statements, it will be insufficient to prevent judgment.   But if not deficient in either of these respects, and on its face fairly setting forth a prima facie defense, it is not to be subjected to as close a technical examination as if it was a special plea demurred to.   Its office is to prevent a summary judgment, and for that purpose a showing of a defense with certainty to common intent is sufficient."   The only question before us is the sufficiency of the affidavits, and it is not necessary to point out in advance the rule by which the damages should be measured ; that ques-

tion will arise on the trial of the case, and will depend upon the evidence produced in support of the defendant's contention. See Dixon-Woods & Co. v. Phillips Glass Co., 169 Pa. 167; Miller v. Wilkes-Barre Gas Co., 206 Pa. 254; Wallace v. Penna. R. R. Co., 52 L. R. A. 33, and notes; Wells v. National Life Association, 53 L. R. A. 33, and notes.

For reasons above given defendant is entitled to a trial.

The appeal is dismissed.