## Lippincott et al. *v.* Warren Apartment Co., Appellant.

322

Argued January 18, 1932.   Before FRAZER, C. J.,
SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Thomas F. Gain,* for appellant.—Under the provision
of the Practice Act the averments of new matter not de-
nied specifically in plaintiffs' reply must be taken as
admitted.   Their effect as admissions could not be
avoided by amending the reply during the trial: Fidel-
ity & Casualty Co. v. Gizynski, 93 Pa. Superior Ct. 152;
Fulton Farmers Assn. v. Bomberger, 262 Pa. 43.

Even if the evidence were sufficient to show that de-
fendant had "afterwards claimed and accepted a credit
from the contractor" for the mere difference in the cost
of the two kinds of pipe it would not prevent the defend-
ant from holding the architects responsible for the
larger item of damage to the value of the building due
to his neglect to supervise the work and in permitting
the substitution: Osterling v. Frick, 284 Pa. 397.

The effect of the defendants' decision to let the steel
pipe "remain in" after learning of the substitution,
would depend upon what stage the work was in when
he learned the fact.

The instructions to the jury made the case turn on
the question of defendant's expression of dissatisfaction
instead of the plaintiffs' performance: Osterling v.
Frick, 284 Pa. 397.

*Thomas Raeburn White,* of *White, Parry, Schnader &
Maris,* with him *Samuel Scoville, Jr.,* for appellees.—

Under the provisions of the Practice Act, averments in an affidavit of defense which are in denial of averments contained in the plaintiff's statement of claim, are not new matter within the meaning of the statute and need, not be answered by plaintiff: Smolevitz v. Slonimsky, 67 Pa. Superior Ct. 227; Klerlein v. Werner, 98 Pa. Superior Ct. 400.

The trial judge made no error in affirming plaintiff's fifth point for charge.

There was no error in the charge of the court on the question of defendant's expression of dissatisfaction with plaintiff's performance.

Where one is employed to do personal services, only so long as the services are satisfactory to the employer, and the employer reserves the right at any time to exclude the employee from the work, he cannot stand by, permit the employee to finish the work, and then allege the services were unsatisfactory and refuse to pay him: Mayer Bros. Construction Co. v. Sterilizer Co., 258 Pa. 217; Dravo Construction Co. v. Rees & Sons Co., 291 Pa. 387; Bunce v. Assn., 63 Pa. Superior Ct. 594.

OPINION BY MR. JUSTICE DREW, March 14, 1932:

This matter arises out of a written contract between plaintiff architects and defendant corporation, owner, concerning the preparation of plans and supervision of the construction of an apartment building in Philadelphia. The principal questions herein considered grow out of that part of the contract touching the supervision of the work of construction. The contract provides that the work of supervision is to be done by the architects to the satisfaction of the owner. It also provides that if the work of supervision shall be unsatisfactory, either party may terminate the portion of the contract relating to supervision upon ten days' notice to the other party, in which case payment shall be made on the two per cent basis fixed in the contract on the amount of work performed at the time of termination. The right

to terminate was not exercised. The building was completed, but not in accordance with the plans and specifications. The architects sued for their commission on the basis of the entire cost of the building, and, among other things, the owner defended on the ground that the architect's work was not done to the owner's satisfaction. The jury found for the architects, and the owner has appealed, resting its contention mainly on certain instructions by the trial court.

The first assignment of error is dismissed because, as will appear later, the case involves questions of fact which were properly submitted to the jury: Morgan v. Gamble, 230 Pa. 165. For this reason, the motion for judgment n. o. v. was rightly overruled.

The next eight assignments are dismissed. The six growing out of the pleadings and particularly out of the court's permission to plaintiffs to file an amended reply during the trial, do not disclose any abuse of discretion or injustice to the defendant. In considering the entire record and particularly defendant's disclaimer at the end of the trial, we believe that defendant's supplemental or amended affidavit of defense does not set up new matter as defined by the Practice Act, and hence plaintiffs' reply and amended reply were superfluous. Defendant's plea of surprise was, therefore, without merit.

We pass over the two assignments of error growing out of rulings on the evidence.

We sustain the tenth and twelfth assignments, and shall consider the twelfth assignment first. The latter deals with the court's refusal to instruct as requested by defendant in its fifth point on the question of defendant's dissatisfaction with plaintiffs' work of supervision. The point was so modified by the court that the jury was instructed that defendant was under obligation to make known its dissatisfaction promptly or within a reasonable time after the work was done; otherwise satisfaction would be presumed. In this, the court erred. Plaintiffs agreed that their work of super-

vision would be done to the satisfaction of the defendant, and, in the absence of estoppel or waiver, defendant may rightly insist on full compliance with that feature of the contract. It has long been the settled law of this State that a provision in a contract that work shall be done to the satisfaction of one of the parties is enforceable: Campbell Coal & Coke Co. v. P. R. R. Co., 293 Pa. 243, and cases there referred to. Whether the dissatisfaction was honest or feigned is generally a question for the jury. We said in Morgan v. Gamble, supra, at 174-175, "The contract provides that the contractor shall furnish all the materials and perform all the work to the satisfaction of the owner. We have uniformly upheld such contracts and required their observance. Under a contract of that character it is the duty of the contractor to perform to the satisfaction of the owner, and that is the standard by which the sufficiency of the work is to be tested. It is not for the court or the jury to determine whether the work is being done in compliance therewith, but solely for the owner to determine, and with his decision the contractor must comply. Of course the dissatisfaction of the owner which will defeat a recovery by the contractor must be real and genuine, and not one prompted by caprice or bad faith or for the purpose of evading payment of the balance due the contractor. If the objections made by the owner are bona fide and not unreasonable or capricious they must be sustained. The question is generally for the jury, but, the evidence may be such as to require the court to withdraw the case from the jury." One fact, of course, which the jury will consider in deciding whether the owner's alleged dissatisfaction is honest is the time when that dissatisfaction was expressed. But, except under very unusual circumstances, not present here, the court cannot say, as a matter of law, that the owner's mere failure, promptly or within a reasonable time, to express dissatisfaction with the work of supervising the construction, such as was here involved, precludes the de-

fendant from claiming the defense to which it is entitled under the contract. The opposite impression was given to the jury by the trial court, and therefore we sustain appellant's twelfth assignment. Our observations in this regard apply also to that part of the court's charge brought to our attention by the fifteenth assignment.

We also sustain appellant's tenth assignment of error, which questions the action of the trial judge in affirming plaintiffs' fifth point. That point was as follows:

"5. If you find that during the progress of the work the plaintiffs ascertained that steel pipe instead of wrought iron pipe was being installed in the building, in violation of the specifications, and plaintiffs called the matter to the attention of the defendant, and the defendant, after consideration, instructed the plaintiffs to permit the steel pipe to remain in and be installed in the building, or acquiesced in such substitution otherwise, and afterwards claimed and accepted a credit from the contractor for an amount representing the difference in cost between the steel pipe and wrought iron pipe, the defendant cannot now withhold the plaintiffs' commissions either in whole or in part on account of this transaction, or on account of any alleged damage resulting from the installation of the steel pipe."

Plaintiffs testified that they discovered and reported the wrongful substitution of steel pipe for wrought iron pipe to defendant in the early stages of the work of construction. Defendant alleged and testified that it was advised of this wrongful substitution in the later stages of the work of construction, when the pipes were imbedded in cement, and when it would require much time and expense to remove and replace them. This conflict of testimony as to time was disregarded by the trial court when it affirmed plaintiffs' fifth point. That is, the phrase "during the progress of the work" was too broad and vague to guide the jury correctly, for by using that language the court instructed the jury that the time element was immaterial. Under that language and the

remaining language of the court, the jury was told that the defendant could not withhold payment irrespective of when it learned of the wrongful substitution and irrespective of when it permitted the wrong steel pipe to remain in the building or acquiesced in the substitution otherwise. The trial judge should have instructed the jury that the time element was important, for if the jury found that the owner learned of the substitution in the early stages of the work, as testified to by plaintiffs, and acquiesced therein, the jury might properly find that the owner's present claim of dissatisfaction is not made in good faith. But if the owner learned about the substitution of the wrong pipe at a time when it would be expensive and otherwise burdensome to remove and replace it, as defendant testified, its acquiescence should not operate as a waiver of its rights against the architects or subject it to the charge of capriciousness or bad faith. Under the latter circumstances, the owner would only be making a virtue of necessity; he would not, however, thereby be proclaiming his satisfaction with the architects' performance. In other words, in the absence of words or actions indicating the owner's satisfaction or constituting a waiver or excuse of plaintiffs' alleged nonperformance, the defendant had a right to claim that it was honestly dissatisfied with the architects' work of supervision, even though it had claimed and obtained a substantial credit from the contractor on account of the contractor's breach of contract. Such a credit was no more than simple justice to the defendant; and defendant's acceptance of that credit was not necessarily a waiver or renunciation of its rights against the architects. If it believed the owner's witnesses, the jury might still properly find that the owner was honestly dissatisfied with the architects for allowing this unauthorized substitution of steel pipe and other inferior material to be made. The court erred, therefore, in telling the jury that any acquiescence and a credit by the contractor to the defendant prevented the

defendant from withholding the plaintiffs' commission in whole or in part. A credit from the contractor under the defendant's testimony, was a right which the defendant had against the contractor, irrespective of any right it might have against the architects. See Schwartz v. Kuhn, 71 N. Y. Misc. 149. The two rights were not interdependent. Nor was defendant compelled to elect between the two. True, that item of credit could be and no doubt would be considered by the jury in determining whether defendant's alleged dissatisfaction with the work of supervision by the architects was honest or not; but merely claiming and receiving such a credit does not prevent defendant from insisting upon the architects' performance in accordance with the written contract. We feel, therefore, that the instructions of the trial court were prejudicial to the defendant and this assignment is sustained.

Judgment reversed and new trial awarded.